829 So.2d 857 (2002)
Inquiry Concerning a Judge, No. 00-03, Re: Rosa I. RODRIGUEZ.
No. SC01-358.
Supreme Court of Florida.
October 3, 2002.
*858 Herbert M. Klein and Hugo L. Black of Wetherington, Klein & Hubbart, Miami, FL, for Petitioner.
James Wolf, Chair, Judicial Qualifications Commission, Tallahassee, FL, Thomas C. MacDonald, Jr., General Counsel, and Martha J. Cook, Special Counsel, Judicial Qualifications Commission, Tampa, FL, John R. Beranek, Counsel to the Hearing Panel, Judicial Qualifications Commission, Tallahassee, FL; and Marvin E. Barkin and John E. Johnson of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, Special Counsel, Judicial Qualifications Commission, Tampa, FL, for Respondent.
PER CURIAM.
We have for review the Findings and Recommendations of Discipline of the Judicial Qualifications Commission (JQC) that Judge Rosa I. Rodriguez, a judge of the Circuit Court of the Eleventh Judicial Circuit of Florida, committed, during her campaign for judicial office, several violations of chapter 106, Florida Statutes (1997 & Supp.1998), and violations of Canons 1, 2, 5D, 6B, and 7 of the Code of Judicial Conduct. The JQC recommends that Judge Rodriguez be disciplined by: (1) a public reprimand to be delivered personally before this Court; (2) four months' suspension without pay; (3) a $40,000 fine payable upon Judge Rodriguez's return to the bench in equal monthly payments until the end of her present term; and (4) payment of all court reporter's fees incurred by the JQC. We have jurisdiction. Art. V, § 12, Fla. Const. We approve the JQC's findings and recommendation of discipline.

FINDINGS OF FACT
The JQC served Judge Rodriguez with a Notice of Formal Proceedings alleging that during her campaign for the office of Circuit Court Judge, in 1998, she committed certain acts in violation of Canons 2, 5D, 6B, and 7 of the Code of Judicial Conduct. The JQC and Judge Rodriguez presented a stipulation to this Court pursuant to article V, section 12, Florida Constitution, and rule 6(j) of the Florida Judicial Qualifications Commission Rules. Judge Rodriguez admitted to the conduct and the impropriety of that conduct, and did not contest the charges. The JQC recommended a public reprimand.
We rejected the JQC's recommendation and remanded the case for a formal hearing. Based on testimony presented at the formal hearing, a stipulation entered by Judge Rodriguez, and evidence and records, the JQC made the following specific findings:
1. On June 30, 1998, Judge Rodriguez knowingly accepted a campaign contribution in the amount of $200,000 made for the purpose of influencing the results of her judicial contest for the circuit judgeship she now occupies.
2. On June 30, 1998, Judge Rodriguez filed campaign reports with the Division of Elections stating that she had made a $200,000 loan to her campaign. *859 That report was misleading for several reasons. First, at the time of that report, Judge Rodriguez knew that the actual source of the $200,000 loan was her then boyfriend, attorney Gabriel Bach. Second, at the time Judge Rodriguez reported receipt of the $200,000 on June 30, 1998, she knew that her campaign had not actually received the money. Third, at the time the judge wrote her personal check for $200,000 to her campaign account she knew that her personal account balance of approximately $1,900, that the check was issued without sufficient funds, and that the check would not be honored if deposited. Lastly, Judge Rodriguez held her personal check dated June 30, 1998, and did not deposit it to her campaign account until July 17, 1998, because she did not actually receive the funds from the $200,000 loan into her personal account until July 13, 1998.
3. During the campaign the judge violated Chapter 106, Florida Statutes, by failing to deposit all funds received prior to the end of the fifth business day as required by law. Specifically, Judge Rodriguez delayed depositing the June 30, 1998, check in the amount of $200,000 from Hugo Rodriguez payable to her for her campaign, for over 17 days.
4. During the campaign, Judge Rodriguez misrepresented the source of her contributions. Specifically, the judge reported that either she or her brother, Hugo Rodriguez, were [sic] the source of the June 30, 1998, loan, and failed to report that Gabriel Bach actually provided the funds for the loan to her campaign.
5. On September 14, 1998, Judge Rodriguez filed an inaccurate report under Section 106.075, Florida Statutes, stating the source of the $200,000 loan to her campaign was her brother, Hugo Rodriguez, when in fact she knew that the true source of the loan was Gabriel Bach. In addition, she stated that the loan was made on July 12, 1998, contrary to her earlier report that the loan was made on June 30, 1998.
6. On November 30, 1998, the judge filed an inaccurate report under Section 106.075, Florida Statutes, stating that she had raised $281,715, of which $235,100 were loans, and spent $281,715, of which $105,191 were loan repayments to the judge. In fact, $80,000 of those monies was used as loan repayments to Gabriel Bach.
7. On July 13, 1998, Judge Rodriguez filed a Form 6 report entitled "Full and Public Disclosure of Financial Interests". That report, signed by the judge, failed to include the $120,000 balance of the loan obligation to Gabriel Bach incurred by the judge on June 30, 1998.
After the campaign the judge filed a misleading letter dated October 14, 1999, with the Division of Elections, stating her net worth statement failed to include a $120,000 loan balance from a $200,000 loan from Hugo Rodriguez, which by agreement was being repaid to Gabriel Bach. In fact, the loan was made by Mr. Bach and he was the person to which the judge was indebted on that date.
Based on these findings, the JQC concluded that Judge Rodriguez violated chapter 106, Florida Statutes, and Canons 1, 2, 5D, 6B, and 7 of the Code of Judicial Conduct.
Both section 106.075, Florida Statutes (2000), and the applicable provisions of the Code of Judicial Conduct delineate some of the financial practices which must be observed in judicial campaigns. Section 106.075 provides:
(1) A person who is elected to office must report all loans, exceeding $500 in value, made to him or her and used for campaign purposes, and made in the 12 months preceding his or her election to *860 office, to the filing officer. The report must be made, in the manner prescribed by the Department of State, within 10 days after being elected to office.
(2) Any person who makes a contribution to an individual to pay all or part of a loan incurred, in the 12 months preceding the election, to be used for the individual's campaign, may not contribute more than the amount which is allowed in s. 106.08(1).
The canons that the JQC found were violated by Judge Rodriguez's actions provide as follows.
Canon 1 provides that a judge shall uphold the integrity and independence of the judiciary.
Canon 2 provides that a judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities. Canon 2A requires that a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
Canon 5 provides that a judge shall regulate extrajudicial activities to minimize the risk of conflict with judicial duties. Canon 5(D)(5) specifies that a judge shall not accept a gift, bequest, favor, or loan from anyone under various circumstances, and if the value of an appropriate gift, bequest, favor, or loan exceeds $100, then the judge must report it in the same manner as the judge reports gifts under Canon 6B(2).
Canon 6 deals with fiscal matters of a judge, and requires that they be conducted in a manner that does not give the appearance of influence or impropriety. Canon 6(B) requires a judge to file a public report as required by article II, section 8 of the Florida Constitution.
Canon 7 requires that judges should refrain from political activity inappropriate to their judicial office. This includes political conduct in general and conduct during a campaign for office.
We have reviewed the stipulation of facts entered into by Judge Rodriguez and the JQC, as well as the transcript from the formal hearing. We have also considered the documentary evidence of record, including the opinion letters issued by the Division of Elections. We conclude that the JQC's findings are established by clear and convincing evidence. See In re McMillan, 797 So.2d 560 (Fla.2001); In re Frank, 753 So.2d 1228, 1234 (Fla.2000); In re McAllister, 646 So.2d 173, 177 (Fla. 1994). The findings demonstrate that Judge Rodriguez's campaign finance activities and reporting practices violated both the spirit and the letter of section 106.075 and canons 1, 2, 5D, 6B, and 7.
Because the JQC's findings meet the clear and convincing standard of proof, we give the findings persuasive force and great weight in considering the JQC's recommendation of discipline.[1]See McMillan, 797 So.2d 560; Frank, 753 So.2d 1228; McAllister, 646 So.2d 173.

DISCIPLINE
In 1997, article V, section 12, of the Florida Constitution, relating to judicial discipline, was amended, and section 12(a)(1) now provides: "For purposes of this section, discipline is defined as any or all of the following: reprimand, fine, suspension with or without pay, or lawyer discipline." Prior to the amendment, the only discipline available was a public reprimand or removal from office. The 1997 amendment provides an opportunity to impose *861 a discipline of something more than a public reprimand and something less than removal from office, where warranted. The JQC has now recommended a discipline between the two extremes.
The JQC recommends[2] as a part of Judge Rodriguez's discipline that she pay a fine of $40,000. The JQC explains that the fine "is designed to reimburse the public for payments made to the Respondent during her prior paid absence from the bench." Judge Rodriguez's prior paid absence was an eight-month paid suspension which she voluntarily took while being investigated by the State for potential criminal violations of the election laws. All charges related to the State's investigation were eventually dismissed. The amount of the fine represents approximately half of the salary she received during that eight-month suspension. We understand that the JQC intended the fine and the four-month suspension without pay to account for the monies paid to her during her previous suspension. However, the fine and the unpaid four-month suspension will not necessarily make the State whole. Generally, when a judge is suspended or on leave, a senior judge is appointed in her place. The senior judge's salary is paid out of a special fund. Thus, the JQC should in the future also take into consideration, when determining the amount of any fine, the potential financial burden a given circuit incurs when it has to appoint a senior judge in the event of a suspension. Any fine that is intended to make the circuit whole should include that component.
In this instance, we accept the JQC's recommendation of discipline. Thus, Judge Rodriguez is hereby suspended without pay from her duties as a circuit court judge effective immediately. She is also ordered to pay a fine of $40,000 in equal monthly payments until the end of her present term. The payments shall commence upon her return as an active member of the judiciary. Judge Rodriguez shall also pay all court reporter's fees incurred by the JQC. Along with the imposed suspension, fine, and costs, we hereby command Judge Rosa I. Rodriguez to appear before this Court for the administration of a public reprimand at a time to be set by the clerk of this Court.
It is so ordered.
ANSTEAD, C.J., SHAW, WELLS, PARIENTE, and QUINCE, JJ., and HARDING, Senior Justice, concur.
LEWIS, J., recused.
NOTES
[1] Article V, section 12(c), states:

(1) The supreme court may accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the commission....
[2] In making its recommendation of discipline, the JQC considered not only the facts that were presented and stipulated to but also the evidence offered in mitigation. The JQC found that there was no evidence suggesting that Judge Rodriguez's conduct directly affected the choice of the voters, although it did adversely affect and impair the public perception of the judiciary. The JQC also considered Judge Rodriguez's exemplary record personally, professionally, and on the bench, her acknowledgment of the impropriety of her conduct, the sincere apologies which she has continued to express, and the fact that criminal charges against her arising out of her campaign finance reporting were dismissed. The JQC also found that Judge Rodriguez's actions were committed negligently, and not as a pervasive scheme to evade the election laws.