PER CURIAM.
We review the recommendation of the Judicial Qualifications Commission (JQC) that Judge Yvonne Colodny receive the sanction of a public reprimand and a fine of $5000 for misconduct during her 2008 campaign for circuit court judge in the Eleventh Circuit. We have jurisdiction. See art. V, § 12, Fla. Const. For the reasons that follow, we approve the recommended discipline.
I. BACKGROUND
The JQC filed charges against Judge Colodny, alleging that during her 2008 judicial campaign, Judge Colodny listed contributions to her campaign fund totaling $125,000 as loans made by her, when those funds were in fact loans from her father made in violation of the contribution limits set by section 106.08, Florida Statutes (2007). The JQC alleged that Judge Co-lodny’s conduct violated Canon 1 (A Judge Shall Uphold the Integrity and Independence of the Judiciary), Canon 2A (“A judge shall respect and comply with the law and shall act ... in a manner that promotes public confidence in the integrity and impartiality of the judiciary.”), and Canon 6B (Public Financial Reporting) of the Florida Code of Judicial Conduct.
In July 2010, the JQC and Judge Colod-ny entered a stipulation and filed it with this Court. The stipulation provided the following detail regarding Judge Colodny’s misconduct. On May 1, 2008, Judge Co-lodny executed a promissory note for $150,000 in favor of her parents Michael and Lou Anne Colodny, which was to be secured by a mortgage on Judge Colodny’s condominium in Miami-Dade County. In four installments during the period of August through October 2008, Michael Colod- *431 ny disbursed $125,000 to Judge Colodny. Following each disbursement, Judge Co-lodny deposited funds in the same amount as the disbursement into her campaign account. Each of these four deposits was listed on Judge Colodny’s quarterly campaign treasurer’s reports as a loan from the candidate.
Judge Colodny was a candidate in the August 26, 2008, primary election and was elected to office on November 4, 2008. On November 11, 2008, Judge Colodny filed a report with the Division of Elections pursuant to section 106.075(1), Florida Statutes (2007), disclosing that she received loans in the aggregate amount of $125,000 from her father. Section 106.075(1) provides that “within 10 days after being elected to office” “[a] person who is elected to office must report all loans, exceeding $500 in value, made to him or her and used for campaign purposes, and made in the 12 months preceding his or her election to office.”
On July 2, 2009, Judge Colodny filed her annual Form 6 “Full and Public Disclosure of Financial Interests” statement, which required disclosure of all financial interests for 2008. Judge Colodny failed to disclose the loans from her father on the Form 6. On August 31, 2009, Judge Colodny and her parents modified their agreement— reducing the amount of the promissory note to $125,000 and relinquishing the lien on the condominium to allow for the sale of the condominium. After Judge Colodny received notice in January 2010 that the JQC had begun an investigation, Judge Colodny filed an amended Form 6, which listed the liability to her parents.
In the stipulation, Judge Colodny accepted responsibility for her wrongdoing. She admitted that the loan from her father was made “specifically for her use in campaigning for judicial office and was made for the purpose of influencing the results of the election.” Judge Colodny explained that she had intended to adhere to the campaign finance laws but erroneously interpreted section 106.075 as implicitly allowing judicial candidates to borrow campaign funds from individuals in excess of $500 per lender. Judge Colodny conceded that “she should have exercised greater care in the disclosure of her liabilities on the Form 6.”
The stipulation incorporated the JQC’s Findings and Recommendation of Discipline. The JQC concluded that Judge Co-lodny violated Canons 1, 2A, and 6B. However, because it found that Judge Co-lodny did not make any intentional misrepresentations, the JQC distinguished Judge Colodny’s case from In re Rodriguez, 829 So.2d 857 (Fla.2002), and In re Pando, 903 So.2d 902 (Fla.2005). The JQC recommended a public reprimand and a fine of $5000 as appropriate discipline.
II. ANALYSIS
Article V, section 12 of the Florida Constitution provides that in the case of judicial misconduct, this Court “may accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the [JQC] and it may order that the ... judge be subjected to appropriate discipline.” Art. V, § 12(c)(1), Fla. Const. (2008). “Although this Court gives the findings and recommendations of the JQC great weight, the ultimate power and responsibility in making a determination to discipline a judge rests with this Court.” In re Renke, 933 So.2d 482, 493 (Fla.2006) (citing In re Angel, 867 So.2d 379, 382 (Fla.2004)). In this case, the JQC recommended that Judge Colodny be publicly reprimanded and fined $5000. We agree that Judge Colodny’s misconduct was less egregious or more mitigated than the misconduct at issue in Rodriguez and Pando and that a less severe sanction than was *432 imposed in those cases is appropriate here. Because the JQC’s recommended discipline is consistent with this Court’s precedent, we approve the recommendation.
In Rodriguez, the JQC determined that Judge Rosa I. Rodriguez knowingly accepted a campaign contribution in the amount of $200,000, made for the purpose of influencing the results of the election. The loan was made by Attorney Gabriel Bach, Judge Rodriguez’s then boyfriend. Judge Rodriguez filed campaign reports with the Division of Elections, stating that she personally loaned the $200,000 to her campaign. Additionally, in reports submitted pursuant to section 106.075, Florida Statutes (1997), Judge Rodriguez represented that the loan was made by her brother Hugo Rodriguez and failed to disclose that $80,000 had been used to partially repay Bach. In a Form 6 public disclosure, Judge Rodriguez again failed to disclose the $120,000 remaining debt to Bach. Finally, after the campaign, Judge Rodriguez filed a letter with the Division of Elections, falsely stating that her previously submitted net worth statement failed to include a $120,000 balance on a loan from Hugo Rodriguez. Rodriguez, 829 So.2d at 858-59.
The JQC concluded that Judge Rodriguez’s conduct violated provisions of chapter 106, Florida Statutes, and Canons 1, 2, 5D, 6B, and 7 of the Code of Judicial Conduct. The JQC recommended that Judge Rodriguez be suspended without pay for four months, receive a public reprimand, be fined $40,000, and pay the court reporter fees incurred by the JQC. This Court accepted the recommended discipline, explaining that the $40,000 fíne was designed to partially reimburse the State for salary paid to Judge Rodriguez while she was previously suspended with pay during a criminal investigation. Id. at 861.
In Rodriguez, the JQC determined that “Judge Rodriguez’s actions were committed negligently, and not as a pervasive scheme to evade the elections laws.” Id. at 861 n. 2. In this case, the JQC determined there was “nothing in the record to indicate that Judge Colodny acted other than on the advice of counsel and based on her interpretation of the applicable statutes.” This finding was supported by affidavits submitted to the investigative panel by Judge Colodny’s father and her campaign treasurer. Both individuals averred that in an attempt to comply with the campaign finance law, they relied on page 23 of the 2007 Division of Elections’ Candidate and Campaign Treasurer Handbook, which stated that “[a]ll personal loans exceeding $500 in value, made to a candidate and used for campaign purposes ... must be reported on Forms DS-DE 73 and 73A, Campaign Loans Report, and filed with the filling officer within ten days after being elected to office.”
The facts of Rodriguez show that the misconduct involved there was significantly more serious than Judge Colodny’s misconduct. After her election, Judge Colodny promptly informed the Division of Elections of the loan from her father, and after receiving notice of the JQC’s investigation, she filed an amended Form 6. And while Judge Colodny initially failed to disclose the true source of the loans to her campaign fund, unlike Judge Rodriguez she did not misattribute the funds to an uninvolved third party. Judge Rodriguez’s false reports that concealed the involvement of attorney Bach in her campaign were more systematic and egregious than Judge Colodny’s omissions. Moreover, there is no indication in the record that Judge Colodny was ever suspended with pay. Accordingly, there is no need to reimburse the State for unearned salary. Based on the foregoing, there is a basis for imposing lesser discipline in this case.
*433 We also agree that a significant fine like that imposed in Pando is not warranted in this case. In Pando, the JQC and Judge Ana Marie Pando stipulated that during the course of her 1998 and 2000 election campaigns, Judge Pando “knowingly or recklessly” accepted a loan from her mother in excess of the $500 statutory limit that was made for the purpose of influencing the results of an election; accepted numerous loans from her mother and her stepfather that were in excess of the $500 statutory limit; “knowingly or recklessly” violated statutory reporting provisions by misrepresenting the source of these loans in her campaign finance reports; and made misleading statements in her deposition by special counsel for the JQC regarding the source of a purported $25,000 loan. 903 So.2d at 903. The JQC determined that Judge Pando violated provisions of chapter 106, Florida Statutes, and Canons 1, 2, and 7 of the Code of Judicial Conduct. The JQC recommended a public reprimand and a $25,000 fíne, and this Court approved the recommended discipline. Id. at 903-04.
Judge Pando made misleading statements when questioned by the JQC about a loan. In contrast, Judge Colodny was “[rjesponsive” to the investigative panel, voluntarily provided further documentation to the panel, and filed a corrected Form 6 when “she recognized that her filings were inadequate.” This Court has previously approved recommended disciplinary sanctions where the JQC relied on the respondent’s cooperation as a mitigating factor. See, e.g., In re Luzzo, 756 So.2d 76, 77-78 (Fla.2000) (approving public reprimand where judge was candid, remorseful, and cooperative after improperly accepting baseball tickets from practicing attorneys); In re Brown, 748 So.2d 960, 961-62 (Fla.1999) (approving public reprimand for judge’s issuance of orders and warrants in cases from which he should have been recused where judge displayed remorse and cooperated with the JQC).
Finally, the JQC’s recommendation of a modest fíne and a public reprimand is consistent with a distinction this Court has drawn between judicial misconduct that suggested partiality by the judge and judicial misconduct that did not suggest partiality. In Angel, this Court concluded that Judge Angel’s numerous, improper partisan campaign activities warranted a public reprimand. This Court distinguished Judge Angel’s case from more “egregious cases, where a judge’s misconduct included implications that he or she would make partisan decisions on the bench.” 867 So.2d at 383. This Court noted that in cases where the judge’s impartiality was compromised, the “JQC has recommended a substantial fíne in addition to a public reprimand and even removal.” Id. (citing In re Kinsey, 842 So.2d 77, 88 (Fla.2003) (approving recommendation of a public reprimand, a $50,000 fine, and costs for campaign misconduct that included “implicit pledges that if elected to office, Judge Kinsey would help law enforcement” and victims of crime); In re McMillan, 797 So.2d 560, 572 (Fla.2001) (approving recommendation that Judge McMillan be removed from office due to a pattern of misconduct including promises that he would rule in a prosecution-friendly manner if elected)). There is nothing in the instant record to suggest that Judge Co-lodny’s impartiality was affected by the loan from her father. Thus, a substantial fine is unnecessary.
III. CONCLUSION
In summary, we accept the JQC’s recommendation of a public reprimand and a fine. We order that Judge Colodny pay a fine of $5000 and appear before this Court for the administration of a public reprimand at a time to be set by the Clerk of *434 this Court. See In re Frank, 753 So.2d 1228, 1242 (Fla.2000).
It is so ordered.
CANADY, C.J., and PARIENTE, LEWIS, POLSTON, LABARGA, and PERRY, JJ., concur.
QUINCE, J., concurs in result.